# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| TERRY R. RAYMOND,<br><br>   Plaintiff,<br><br>vs.<br><br>U.S.A. HEALTHCARE<br>CENTER–FORT DODGE, L.L.C., and<br>the parent corporation U.S.A.<br>HEALTHCARE, INC.,<br><br>   Defendants. | No. C 05-3074-MWB<br><br>**MEMORANDUM OPINION AND<br>ORDER REGARDING PLAINTIFF'S<br>SECOND MOTION IN LIMINE** |

_____

   This action for retaliation for filing workers' compensation claims comes before the court pursuant to plaintiff Raymond's April 18, 2007, Second Motion In Limine (docket no. 34). Defendant U.S.A. Healthcare filed its Resistance To Plaintiff's Second Motion In Limine (docket no. 36) on April 25, 2007. This matter is currently set for trial to begin on May 14, 2007, so that the time is ripe for the court to resolve Raymond's Second Motion In Limine in order to assist the parties in their preparations for trial.

   In her motion and supporting brief, Raymond states that she has received two workers' compensation settlements and currently has a third workers' compensation claim pending. She seeks an order excluding any evidence regarding any benefits that she has received for her workers' compensation claims, because such evidence is irrelevant under Rule 401 of the Federal Rules of Evidence as evidence of compensation from a "collateral source." She contends, further, that such evidence should be excluded, because any probative value of such evidence is outweighed by unfair prejudice and such evidence

would confuse or mislead the jury. She also argues that, if the jury finds that she was wrongfully terminated for making workers' compensation claims, in violation of public policy, then her damages for back pay and emotional distress should not be reduced by any workers' compensation benefits that she received for other workplace injuries.

In its resistance, U.S.A. Healthcare argues that the evidence concerning Raymond's termination reveals a much more complicated picture than Raymond asserts, so that the focus during trial will be upon the reasons for Raymond's termination and what, if any, role her workers' compensation claims played in her termination. Under these circumstances, U.S.A. Healthcare argues that evidence surrounding Raymond's receipt of workers' compensation benefits and the role U.S.A. Healthcare played in her receipt of such benefits is clearly relevant and that the probative value of such evidence is not outweighed by any unfair prejudice. Evidence of the circumstances related to Raymond's receipt of benefits, U.S.A. Healthcare argues, does not implicate the collateral source rule, and is probative and non-prejudicial. U.S.A. Healthcare concedes that admission of evidence of the actual amount or sums that Raymond received for her workers' compensation claims would violate the collateral source rule, because it might improperly lead a jury to reduce any damages awarded to Raymond by the amount of benefits she received from a collateral source, but resists exclusion of evidence that Raymond received such benefits and evidence showing U.S.A. Healthcare's role in her receipt of such benefits.

"Under the collateral source rule a tortfeasor's obligation to make restitution for an injury he or she caused is undiminished by any compensation received by the injured party from a collateral source." *Schonberger v. Roberts*, 456 N.W.2d 201, 202 (Iowa 1990) (citing *Clark v. Berry Seed Co.*, 225 Iowa 262, 271, 280 N.W. 505, 510 (1938)). The Iowa Court of Appeals has stated that, after imposition of the statutory limitation on the

2

"collateral source rule" embodied in IOWA CODE § 668.14,[1] "[t]o the extent that the collateral source rule remains viable, its application is limited to those cases wherein the underlying purpose of the rule is advanced." *Ray v. Paul*, 563 N.W.2d 635, 639 (Iowa Ct. App. 1997). As the parties acknowledge, the Eighth Circuit Court of Appeals has repeatedly recognized that "[w]orkers' compensation benefits are considered a collateral source." *Salitros v. Chrysler Corp.*, 306 F.3d 562, 573 (8th Cir. 2002) (citing *Moysis v. DTG Datanet*, 278 F.3d 819, 828 (8th Cir. 2002)).

The court finds that any amounts or sums that Raymond may have received for her workers' compensation claims should be excluded pursuant to the "collateral source rule." *See id.* Exclusion of such evidence in this case is consistent with the purpose of the rule, *see Ray*, 563 N.W.2d at 639 (the "collateral source rule" applies only where the underlying purpose of the rule is advanced), because U.S.A. Healthcare's obligation to pay damages *for retaliation for filing workers' compensation claims* should be undiminished by any compensation received by Raymond for the underlying workplace injuries, because the workers' compensation was for a different injury. *See Schonberger*, 456 N.W.2d at 202 (under the rule, a tortfeasor's obligation to pay damages is undiminished by payments from a collateral source). To put it another way, the amount or sums that Raymond has received as workers' compensation benefits for workplace injuries are simply irrelevant to the determination of any damages that U.S.A. Healthcare might be required to pay for the different tortious conduct of retaliating for filing workers' compensation claims. Thus,

---

[1] Although the "collateral source rule" has been modified by statute in Iowa, *see* IOWA CODE § 668.14; *Kuta v. Newberg*, 600 N.W.2d 280, 290-91 (Iowa 1999) ("We have noted that section 668.14 was enacted to prevent a claimant from recovering twice for the same injury."); *Schonberger*, 456 N.W.2d at 202, the parties do not assert that the statutory modification is relevant here.

3

evidence of the amount or sums that Raymond has received as workers' compensation benefits will be excluded pursuant to the "collateral source rule" and pursuant to Rule 402 of the Federal Rules of Evidence, which makes irrelevant evidence inadmissible.

The analysis is different, however, for evidence that Raymond applied for and received workers' compensation benefits and that U.S.A. Healthcare had some role in Raymond's receipt of such benefits, whether that role consisted of actively assisting her application and the award of benefits, or simply in not resisting or impeding either her application or an award of benefits to her. Such evidence is relevant here, as U.S.A. Healthcare argues, because it may suggest that U.S.A. Healthcare did not have a retaliatory animus toward employees who sought workers' compensation benefits in general or toward Raymond in particular because of her application for such benefits. *See* FED. R. EVID. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."); *see also Raymond v. U.S.A. Healthcare Ctr.—Fort Dodge, L.L.C.*, 448 F. Supp. 2d 1047, 1058-59 (N.D. Iowa 2006) (summary judgment ruling identifying the elements of a claim for retaliation for filing workers' compensation benefits under Iowa law as the following: (1) the plaintiff engaged in protected activity; (2) the plaintiff suffered adverse employment action; and (3) the circumstances give rise to an inference that the plaintiff's discharge was causally related to her protected activity, and noting that the plaintiff must ultimately prove that, notwithstanding other justifications for adverse action, her protected activity was the "determinative factor" or "final straw" leading to the adverse action).

Nor, strictly speaking, would such evidence be proscribed by the "collateral source" rule, because the rule bars evidence of "*compensation* received by the injured party from a collateral source," *i.e.*, compensation from a collateral source for the same injury at

4

issue in the case, *Schonberger*, 456 N.W.2d at 202 (emphasis added), but does not necessarily bar evidence that the plaintiff was entitled to compensation from a collateral source for a different injury. For the same reason—that workers' compensation for workplace injuries has no effect on the damages that the plaintiff might be entitled to receive for retaliation for filing workers' compensation claims—evidence that the plaintiff was entitled to compensation from a collateral source for workplace injuries and that the defendant employer played a role in the plaintiff's receipt of such benefits is not unduly prejudicial, confusing, or misleading, such that those risks outweigh the probative value of that evidence, and thus, the evidence would be excludable pursuant to Rule 403 of the Federal Rules of Evidence. Any possible prejudice could, likewise, be cured by a limiting instruction explaining that workers' compensation benefits that the plaintiff received for workplace injuries do not reduce the amount of any damages that the plaintiff may be entitled to recover for retaliation for filing workers' compensation claims, because such workers' compensation benefits were for a different injury. Therefore, evidence that Raymond applied for and received workers' compensation benefits and that U.S.A. Healthcare had some role in Raymond's receipt of such benefits will not be excluded.

THEREFORE, plaintiff Raymond's April 18, 2007, Second Motion In Limine (docket no. 34) is **granted** to the extent that evidence of the amount or sums that Raymond has received as workers' compensation benefits will be excluded at trial pursuant to the "collateral source rule" and pursuant to Rule 402 of the Federal Rules of Evidence. However, nothing in this ruling shall be construed to preclude or limit the presentation of evidence that Raymond applied for and received workers' compensation benefits for

workplace injuries and that U.S.A. Healthcare had some role in Raymond's receipt of such benefits.

**IT IS SO ORDERED.**

**DATED** this 2nd day of May, 2007.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA